IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHRYN KRUESI,　　　　　　　　　　　　　　　　Case No. 07-6369-HO

　　　　　　Plaintiff,　　　　　　　　　　　　ORDER

　　v.

PACIFICORP, an Oregon
corporation,

　　　　　　Defendant.


Plaintiff Kathryn Kruesi alleges claims for quid pro quo sexual harassment, hostile work environment sexual harassment, disparate treatment sex discrimination and retaliation in violation of Title VII (42 U.S.C. § 2000e et seq.) and Oregon statute, and claims under Oregon common law for infliction of emotional distress and wrongful discharge.  Defendant Pacificorp filed a motion for summary judgment.

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

As explained below, a reasonable juror could conclude that defendant permitted a hostile work environment after plaintiff complained of harassment, but no reasonable juror could find in favor of plaintiff on all of the elements of her other claims. Defendant's motion for summary judgment is therefore granted in part and denied in part. Plaintiff may proceed on her hostile work environment sexual harassment claims under Title VII and Oregon statute.

## Summary Judgment Facts

The following facts are undisputed or drawn from the evidence viewed in the light most favorable to plaintiff while affording plaintiff the benefit of all reasonable inferences.

From January 1999 to January 2001, and again from January 2003 to May 2006, defendant employed plaintiff as a meter reader in the metering department of its Willamette Operations office (Willamette office) in Albany, Oregon. Plaintiff resigned from the position on May 19, 2006. Aaron Hancock and Lawrence Brown supervised plaintiff's work.

In or about April 2005, plaintiff began dating Tom Martin, who worked as a lineman in the wires department of the Willamette office. The romantic relationship ended by December 31, 2005. Martin never worked as a supervisor or manager for defendant.

Martin harassed plaintiff following the termination of their relationship. On March 7, 2006, Martin confronted plaintiff in

the Willamette office parking lot, and again inside the building. Among other statements, Martin called plaintiff a "whore" and a "cunt" and said that he was going to make plaintiff's life into a living hell. Hancock and several other employees witnessed the confrontation. Hancock took plaintiff into his office. Martin left the immediate vicinity and informed his foreman that he needed to leave for the day. The foreman authorized a sick day for Martin. Martin left the Willamette office voluntarily.

Plaintiff advised Hancock that she and Martin had a relationship, that she wanted out of the relationship, and that Martin had been following and harassing her. She told Hancock that Martin had bothered her on prior occasions, had found her in the field at work, had called her names such as "cunt" and "cunta," had broken into her home and attacked her, and had asked plaintiff for sex.

After speaking with plaintiff, Hancock notified defendant's Portland, Oregon human resources department. Marcy Grail and Joseph Ortiz left Portland that day and drove to Albany to investigate. Grail and Ortiz interviewed plaintiff, Martin, and five witnesses on March 7 and 8, 2006. During the investigation, plaintiff reported the following conduct of Martin. Martin phoned plaintiff relentlessly on the morning of March 7, 2006. Martin phoned plaintiff approximately 10 times on March 6, 2006, and asked plaintiff to have sex with him. Martin broke down

3 - ORDER

plaintiff's door on New Year's Eve.  Martin tried to humiliate plaintiff at work on several occasions.  Martin followed plaintiff at work and called her a "cunt" and a "whore."

Plaintiff told Grail and Ortiz that she did not want to leave her employment, but she wanted people to respect her and she feared for her safety.

On March 17, 2006, defendant suspended Martin without pay for ten days, prohibited Martin from disruptive, non-work contact with plaintiff on company property or on company time, and placed Martin on final last chance status, in lieu of termination. Defendant also referred Martin to a mandatory employee assistance program counseling, which he had been attending voluntarily.

Plaintiff identified no flaws or shortcomings related to defendant's investigation of the March 7, 2006 incident.

After March 7, 2006, defendant restricted plaintiff with respect to her movement around the Willamette office building. Defendant instructed plaintiff to use a specific door and to go straight to the meter reading room.  Brown told plaintiff that he wanted to restrict her contact with Martin, and that there were people, including linemen, that weren't happy with plaintiff and did not want to see plaintiff.  Brown told plaintiff that Martin's ability to move around the Willamette office was not similarly restricted because Martin had business throughout the building.

4 - ORDER

The wires and metering departments hold separate mandatory safety meetings for their employees. Plaintiff's position as the elected safety chairperson of the metering department required that she attend the safety meetings of both departments, and that she report potentially relevant safety information from wires department meetings to the metering department. In March or April 2006, Brown asked plaintiff to step down from the position of safety chairperson for the metering department. After plaintiff refused Brown's request, Brown informed plaintiff that metering department employee Jon Buset would attend the wires department safety meetings in her place. Defendant sent Buset to the wires department safety meetings in place of plaintiff in order to keep plaintiff and Martin separated. Plaintiff complained to Brown that it was unfair that she was not allowed to attend the wires department safety meetings. She also told Brown that she was willing to attend the meetings with Martin present. Plaintiff lost no pay or benefits as a result of not attending the wires department safety meetings.

On March 14, 2006, Hancock issued a "Coaching/Counseling Letter" to plaintiff. The letter states that the confrontation with Martin precipitated a disruptive work environment, that the company expects plaintiff to refrain from the use of profane language, yelling, and screaming at others, and that plaintiff is not to engage Tom Martin in any further disruptive, non-work

5 - ORDER

communication while on company property or on company time. The letter indicates a carbon copy to "Human Resources Personnel File." According to defendant's "Abbreviated Policies and Procedures," "Coaching and Counseling" is defined as "[d]iscussion with the employee to identify areas of improvement." Coaching and Counseling is the first among five steps the company may include in administering discipline. "Documented Verbal Warning" is the first step of formal disciplinary action, and a Documented Verbal Warning remains active in a personnel file for one year. The Coaching/Counseling Letter issued to plaintiff does not specify how long it will remain in the personnel file. Grail characterized the absence of such information as an oversight.

After she received the Coaching/Counseling Letter, plaintiff complained to Hancock and Brown that she felt punished for complaining about Martin's conduct.

After he returned from his suspension, Martin walked by plaintiff in the workplace and called plaintiff a "cunta" on between five and ten occasions. Martin told plaintiff that he chose this word to use in front of other people, but that he was really calling plaintiff a "cunt." Martin also stopped at the doorway of the meter reading room and said he wanted to speak with plaintiff. (Martin had business in the adjacent metering room.) When plaintiff read meters in Lebanon, Oregon, Martin

blocked plaintiff's egress from a driveway with his personal vehicle and asked plaintiff to have sex with him.

Plaintiff told Brown that Martin called her "cunta" at work. Plaintiff does not recall exactly when she did so. Plaintiff does not recall reporting that Martin blocked plaintiff in the driveway in Lebanon and asked her to have sex with him. Plaintiff complained to Grail that Martin continued to say things to her when people weren't looking, that plaintiff would do "drive-bys," and that plaintiff would find her in the field on his days off. Plaintiff told Grail that a refresher course on harassment for employees would be a good idea. Grail reminded Martin of the agreements in his discipline letter and advised Martin to avoid plaintiff outside the workplace, and to avoid causing complications in the workplace.

Plaintiff and defendant's employee Rachelle DeSpain have been friends for as long as they have worked together. DeSpain socialized with plaintiff and Martin outside of work. DeSpain stopped talking to plaintiff after plaintiff and Martin broke up.

After March 7, 2006, Mike Nordike and other linemen ceased speaking to plaintiff.

Martin told plaintiff that the union was "E-boarding" her. "E-boarding" is a process by which a bargaining unit employee can file a compliant against another member, who could then be brought before the executive board of the local union for a

7 - ORDER

trial-like proceeding. E-boarding can result in loss of union membership.

Sometime after the March 7, 2006, incident, plaintiff went to an office near the service coordinators and asked where certain paperwork should be filed. The two people in the office walked out of the room. Plaintiff did not report the incident.

On April 12, 2006, plaintiff complained to Brown that Martin phoned her cell phone at 7:53AM and again at 7:56AM, after plaintiff refused to speak with him. Brown told plaintiff that he can only control what happens between 8:00AM and 4:30PM.

On April 13, 2006, plaintiff complained to Brown that Martin phoned her that morning at 7:43AM. Brown offered plaintiff metering routes in another city. Plaintiff declined the offer.

Also on April 13, 2006, Brown informed plaintiff of problems with her meter reading performance over the prior year. Plaintiff had the highest error rate of any employee on a performance evaluation report. Hancock and Brown occasionally rode along with meter readers to evaluate their practices, to help improve safety and performance and to provide an opportunity for employees to speak to a manager without others present. Brown did not ride along with plaintiff and Hancock does not remember doing so.

On April 22, 2006, plaintiff reported to police that someone slashed one of the tires on her car at her home. The police did

not determine a culprit.

After March 7, 2006, plaintiff applied for meter reader positions in Madras and Bend, Oregon, and for a service coordinator position in Albany, Oregon, from which plaintiff could have transferred to Stayton, Oregon. Collective bargaining agreements mandate processes for filling the positions. Defendant did not select plaintiff for any of the positions. Passage of an exam is a prerequisite for employment in the service coordinator position. The exam includes a typing test. At Brown's suggestion and defendant's expense, plaintiff completed a keyboarding class at a local community college to prepare for the service coordinator exam. Immediately before plaintiff commenced the test, Martin came to the door of the testing room and told plaintiff that wherever she goes, "it will follow [her]." Plaintiff failed the typing test by one point. Plaintiff felt very defeated that day and did not report this contact with Martin. Plaintiff also failed the service coordinator test on other occasions. An employee with less seniority than plaintiff accepted the service coordinator position.

Three days after the effective date of her resignation, plaintiff contacted police regarding Martin. The contact resulted in Martin's arrest and conviction for telephonic harassment. Plaintiff relocated to central Oregon.

9 - ORDER

Discussion

I. Sexual Harassment, Sex Discrimination, Retaliation

The standard to prove a prima facie case of discrimination under Oregon law is identical to the standard under federal law. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001).

    A.  Quid Pro Quo Sexual Harassment

There is no evidence or contention that Martin had or acquired authority to confer or withhold jobs or job benefits to plaintiff. Plaintiff cannot prevail on her claims of quid pro quo sexual harassment. Porter v. California Dept. of Corrections, 419 F.3d 885, 892 (9th Cir. 2005).

    B.  Hostile Work Environment Sexual Harassment

Defendant argues that a reasonable juror could not find a severe and pervasive sexually hostile environment, or that defendant responded inadequately to plaintiff's complaints about Martin.

Citing to out of circuit authority, defendant first contends that Martin's alleged harassment of plaintiff is not actionable because it is based on personal animosity following a failed relationship, rather than plaintiff's gender. In Ellison v. Brady, the Ninth Circuit expressly determined not to resolve whether harassing conduct must be sexual in nature. 924 F.2d 872, 876, n.5 (9th Cir. 1991). In Fuller v. City of Oakland, the

10 - ORDER

court stated the plaintiff's burden to prove verbal or physical conduct of a sexual nature, but went on to hold that the former paramour's conduct of phoning plaintiff 25 times a day, threatening to kill himself and running the plaintiff and her boyfriend off the road was actionable. 47 F.3d 1522, 1527-28 (9th Cir. 1995). Fuller necessarily implies that the hostile conduct of a former lover may be actionable.

Of course defendant is not liable for Martin's conduct on or before March 7, 2006, because it had no reason to know of such conduct. A reasonable woman could find the terms and conditions of employment altered by Martin's conduct after March 7, 2006, as stated by plaintiff, however. Plaintiff produced evidence from which a reasonable juror could conclude that Martin continued to harass her at work, in the field, and by telephone after his return from suspension. See Craig v. M&O. Agencies, Inc., 496 F.3d 1047, 1056 (9th Cir. 2007) (citing several cases, including Ellison, 924 F.2d at 873, 880 (holding that a reasonable woman could find a colleague's misguided love letter sufficiently hostile and abusive to be actionable, and that well-intentioned compliments by co-workers can form the basis of a sexual harassment cause of action), and Fuller, 47 F.3d at 1527-28).

A reasonable juror could conclude from the evidence viewed in the light most favorable to plaintiff that plaintiff complained to Grail and Brown that Martin continued to harass

11 - ORDER

her, and that defendant took inadequate corrective measures even though Martin worked under a last chance agreement at the time.

Defendant is not entitled to summary judgment on plaintiff's hostile work environment sexual harassment claims.

C. Retaliation

Defendant argues that there is no evidence that it retaliated against plaintiff for her complaints about Martin.

Plaintiff provides no evidence to undermine the legitimate reasons provided by defendant to place greater restrictions on plaintiff's ability to move about the Willamette office than it placed on Martin's ability to do the same. Plaintiff does not dispute that Martin had business throughout the facility and that wires department employees are required to attend wires department safety meetings. Plaintiff does not elaborate on her conclusory testimony that she lost knowledge and respect when defendant mandated that Jon Buset attend the safety meetings in her place. Plaintiff concedes that she lost no benefits.

A reasonable juror could only conclude that plaintiff received the coaching letter for her role in the March 7, 2006 altercation with Martin. Plaintiff concedes that she screamed profanity at Martin in the workplace that day.

Although plaintiff argues that Brown counseled her for performance issues in retaliation for her complaints about Martin, she fails to rebut defendant's evidence that her work

performance precipitated the discussion.

Plaintiff does not rebut defendant's evidence that it didn't hire her for the service coordinator position because she did not pass the service coordinator exam, and that it didn't hire her for meter reading positions in central Oregon because the terms of the collective bargaining agreement required the positions to be filled by more senior applicants. Plaintiff's evidence that defendant hired a more junior employee for the service coordinator position is unhelpful because plaintiff failed the required service coordinator exam.

Plaintiff complains that co-workers shunned her, but ostracism by co-workers is not a ground for a retaliation claim. Manatt v. Bank of America, NA, 339 F.3d 792, 893 (9th Cir. 2003).

A reasonable juror could not find that defendant subjected plaintiff to an adverse employment action because plaintiff opposed an unlawful practice or conduct that plaintiff reasonably believed to be an unlawful practice. Defendant is entitled to summary judgment on plaintiff's retaliation claims.

D. Disparate Treatment

Defendant argues that there is no evidence that it treated any similarly situated male employee more favorably than plaintiff, or that it subjected plaintiff to an adverse employment action because she is a woman. Plaintiff claims that defendant allowed Buset to attend wires department safety

13 - ORDER

meetings while forbidding her from doing so, and that it allowed Martin to access the entire Willamette office and parking lot while imposing greater restrictions on her movement.  Finally, plaintiff argues that Martin's disciplinary document specifies that it will remain in his file for two years, while plaintiff's document does not indicate when it will be removed, if ever. Plaintiff and Buset and Martin are not similarly situated. Martin is a wires department employee required to attend wires department safety meetings.  Buset and Martin lack the confrontational history of plaintiff and Martin.  Martin's position required access to the entire building.  Although plaintiff's coaching letter lacked durational language, a reasonable juror could only find that Martin received harsher discipline than plaintiff for the March 7, 2006, incident. Plaintiff does not point to evidence that defendant refused a request to remove the counseling letter from her file at the time specified by disciplinary guidelines.

    Defendant is entitled to summary judgment on plaintiff's disparate treatment claim.

II.  Wrongful Discharge

    Defendant argues that there is no evidence that it harbored an intent to cause plaintiff to resign, or that it knew that its acts or failure to act were substantially certain to cause plaintiff to resign, so as to sustain a claim for wrongful

14 - ORDER

discharge. McGanty v. Staudenraus, 901 P.2d 841, 855 (Or. 1995). A reasonable juror could not fault defendant for its response to plaintiff's initial complaint about Martin. Defendant immediately launched an investigation, took reasonable steps to separate Martin and plaintiff, suspended Martin for ten days and placed Martin on a last chance agreement. As noted, plaintiff provides no evidence to undermine defendant's reasons for the manner in which it attempted to separate plaintiff and Martin, and for its decisions not to hire plaintiff for another position. Although a reasonable juror could conclude that plaintiff's supervisors failed to adequately control Martin's conduct after his return from suspension, such a juror could not conclude that defendant or its agents harbored the intent required for plaintiff to prevail on this claim.

Defendant is entitled to summary judgment on plaintiff's wrongful discharge claim.

### III. Intentional and Reckless Infliction of Emotional Distress

Plaintiff's claims for infliction of emotional distress fail because defendant's alleged conduct does not qualify as an "extraordinary transgression of the bounds of socially tolerable conduct." McGanty, 901 P.2d at 849 (quoting Sheets v. Knight, 779 P.2d 1000 (Or. 1989)).

### Conclusion

Based on the foregoing, defendant's motion for summary

15 - ORDER

judgment [#23] is granted in part and denied in part.  Plaintiff may proceed on count one of her first claim and count one of her second claim for hostile work environment under Title VII and state statute, respectively.  Defendant is entitled to judgment as a matter of law on all other claims and counts.

    SO ORDERED.

    DATED this   19th   day of May, 2009.


                                        s/ Michael R. Hogan
                                      United States District Judge